# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IN RE:

N2N Commerce, Inc.,

                Debtor.

---

Stephen Asbaty, Lawrence Bohn, Joel
Cutler, Mark Delcher, Wendy Lahaye,
Ruben Pinchanski, Martyn Redgrave and
Sharen Turney,

                Appellants,

v.

NaviSite, Inc., Optaros, Inc., TIBCO
Software, Inc., *et al*.,

                Appellees.

1:09-cv-12099
Hon. Joseph L. Tauro
United States District Judge

Appeal from United States
Bankruptcy Court for the
District of Massachusetts

Chapter 7

Case No. 09-16581
Hon. Joan N. Feeney

## APPELLANTS' BRIEF

*Counsel for Martyn Redgrave and Sharen Turney*

Daniel C. Cohn (No. 090780)
A. Davis Whitesell (No. 551462)
COHN WHITESELL & GOLDBERG LLP
101 Arch Street
Boston, Massachusetts 02110
Tel.: 617.951.2505

*Counsel for Lawrence Bohn and Joel Cutler*

Michael J. Pappone (No. 388900)
Anthony S. Fiotto (No. 558089)
Jennifer W. Fischesser (No. 651480)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000

*Counsel for Stephen Asbaty, Mark Delcher, Wendy Lahaye & Ruben Pinchanski*

Scott Birnbaum (No. 543834)
BIRNBAUM & GODKIN LLP
280 Summer Street
Boston, Massachusetts 02210
Tel.: 617.307.6100

January 22, 2010

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................iii

BASIS OF APPELLATE JURISDICTION ..........................................................1

ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW .....................1

    Issues...............................................................................................................1

    Standard of Review........................................................................................2

STATEMENT OF THE CASE...............................................................................2

    Overview of Proceeding ................................................................................2

    Factual Background .......................................................................................4

SUMMARY OF ARGUMENT .............................................................................11

ARGUMENT .......................................................................................................12

    A.    The Bankruptcy Court Erred by Failing to Review its Own Subject
            Matter Jurisdiction to Enter the Order for Relief.......................................12

          1.    The Bankruptcy Court was Required to Review its Jurisdiction
                Regardless of Whether it was Questioned by a Party with Standing.............12

          2.    The Three Creditors Do Not Satisfy Section 303(b)'s Requirements...........18

                a.    The Three Creditors do not hold claims ...........................................19

                b.    If the Three Creditors hold claims, such claims are contingent........19

                c.    One of the Three Creditors holds a disputed claim...........................20

    B.    The Bankruptcy Court Erred in Determining that the Former D&Os Lacked
            Standing to Seek Dismissal of the Involuntary Case ...................................22

          1.    The Former D&Os have Standing Based on Collateral Estoppel.................22

          2.    Even if the issue of standing is viewed *de novo*, the
                Former D&Os have established their standing .............................................25

    C.    The Bankruptcy Court Erred in Determining that the Three Creditors
            Were Not Estopped from Filing the Involuntary Petition.............................29

CONCLUSION........................................................................................................................................33

# TABLE OF AUTHORITIES

## Cases

Adelphia Recovery Trust v. Bank of America, N.A., 390 B.R. 80 (S.D.N.Y. 2008)...................26

Arcari v. Marder, 225 B.R. 253 (D. Mass. 1998) ..................................................2, 25

Bender v. Williamsport Area School Dist., 475 U.S. 534 (1986)...................................15

Celotex Corp. v. Edwards, 514 U.S. 300 (1995) ...........................................................15

Comjean v. Cruickshank, 191 B.R. 504 (D. Mass. 1995)...............................................25

Fisher v. Bank Leumi Trust Co. of New York (In re MacFarlane Webster Assoc.),
121 B.R. 694 (Bankr. S.D.N.Y. 1990).......................................................27, 28, 29, 31

Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26 (1st Cir. 1994).................................23

Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1 (2000) .....................21

In re Audio Visual Workshop, Inc., 211 B.R. 154 (Bankr. S.D.N.Y. 1997) ................................14

In re BDC 56 LLC, 330 F.3d 111 (2d Cir. 2003) ...............................................14, 16

In re Ben Franklin Hotel Assocs., 186 F.3d 301 (3d Cir. 1999)...........................................22

In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004)..................................15

In re DemirCo Holdings Inc., 2006 WL 1663237 (Bankr. C.D. Ill. 2006)...................................21

In re Dilley, 331 B.R. 1 (Bankr. D. Me. 2005), rev'd sub nom. Metz v. Dilley (In re Dilley),
339 B.R. 1 (B.A.P. 1st Cir. 2006)........................................................................21

In re Elsa Designs, Ltd., 155 B.R. 859 (Bankr. S.D.N.Y. 1993) ...................................14

In re Euro-American Lodging Corp., 357 B.R. 700 (Bankr. S.D.N.Y. 2007) ..............................21

In re Goldman-Rosenzweig Co., Inc., 65 F.2d 390 (2d Cir. 1933)...........................................32, 33

In re Hayes, 393 B.R. 259 (Bankr. D. Mass. 2008).......................................................26

In re High Voltage Engineering Corp., 403 B.R. 163 (D. Mass. 2009).........................................25

In re John Oliver Co., Inc., 24 B.R. 539 (Bankr. D. Mass. 1982) ...........................................31, 32

In re Jr. Food Mart of Arkansas, Inc., 234 B.R. 420 (Bankr. E.D. Ark. 1999).........................27, 29

In re MarketXT Holdings Corp., 347 B.R. 156 (Bankr. S.D.N.Y. 2006)................................16, 17

In re Mason, 709 F.2d 1313 (9th Cir. 1983) ................................................................15

In re N2N Commerce, Inc., 405 B.R. 34 (Bankr. D. Mass. 2009).............................3, 5, 9, 23, 30

In re N2N Commerce, Inc., 2009 WL 3317274 (Bankr. D. Mass. 2009)...............3, 10, 24, 26, 33

In re New Mexico Properties, Inc., 18 B.R. 936 (Bankr. D. N.M. 1982).......................................14

In re Nosek, 544 F.3d 34 (1st Cir. 2008) ......................................................................2

In re Orlinsky, 2007 WL 1240207 (Bankr. S.D. Fla. 2007) .........................................................21

In re Paczesny, 283 B.R. 715 (Bankr. N.D. Ill. 2002) .....................................................14

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694 (1982)..............15

Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973 (1st Cir. 1995) .........................................23

Moulton v. Coburn, 131 F. 201 (1st Cir. 1904) .......................................................31, 33

Queen City Shoe Mfg. Corp. v. Commonwealth Last Co., 134 F.2d 422 (1st Cir. 1943).......31, 33

Rubin v. Belo Broad. Corp. (In re Rubin), 769 F.2d 611 (9th Cir. 1985) .....................................15

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574 (1999) ...........................................................12, 16

Stetson v. Howard D. Wolf & Assocs., 955 F.2d 847 (2d Cir. 1992) .............................................22

Trusted Net Media Holdings, LLC v. The Morrison Agency
(In re Trusted Net Media Holdings, LLC), 550 F.3d 1035 (11th Cir. 2008)................................14

U.S. v. Kearns (In re Kearns), 219 B.R 823 (B.A.P. 8th Cir. 1998).............................................16

United States v. Cotton, 535 U.S. 625 (2002) .......................................................12, 15

Willy v. Coastal Corp., 503 U.S. 131 (1992).................................................................15

**Statutes**

11 U.S.C. § 109(b) ...................................................................................................14

11 U.S.C. § 301 ........................................................................................................13

11 U.S.C. § 302 ........................................................................................................13

11 U.S.C. § 303 ...............................................................................10, 12, 13, 26, 29, 36

11 U.S.C. § 303(b) .............................................. 11, 13-16, 18, 19, 21, 22, 27, 29

11 U.S.C. § 303(b)(1) ....................................................................18, 19, 20, 22

11 U.S.C. § 303(d) ........................................................................15, 16, 17, 26

11 U.S.C. § 303(h) ...................................................................15, 16, 17, 18, 26

11 U.S.C. § 303(h)(2) ..................................................................................5

11 U.S.C. § 305(a) .........................................................................10, 11, 27

11 U.S.C. § 365 ...........................................................................................5

11 U.S.C. § 502(h) ...............................................................................25, 26

11 U.S.C. § 521 .........................................................................................29

11 U.S.C. § 541(a) .....................................................................................24

11 U.S.C. § 543(b) .....................................................................................24

11 U.S.C. § 543(d)(2) ..................................................................................5

11 U.S.C. § 547 ...........................................................................................6

11 U.S.C. § 547(b)(4)(a) .............................................................................31

11 U.S.C. § 548 ...........................................................................................5

11 U.S.C. § 704(a)(1) .................................................................................24

11 U.S.C. § 707(a) .......................................................10, 11, 12, 27, 28, 29

28 U.S.C. § 157(a) .....................................................................................13

28 U.S.C. § 1332 ..............................................................................................................14

28 U.S.C. § 1334 ..........................................................................................12, 13, 15, 39

28 U.S.C. § 1334(a) ........................................................................................................14

28 U.S.C. § 1334(e)(2) ...................................................................................................13

Pub. L. 109-8, Title XII, § 1234(a)(1) ...........................................................................21

M.G.L. c. 109A, § 5 .........................................................................................................5

M.G.L. c. 109A, § 6(a) .....................................................................................................5

M.G.L. c. 109A, § 6(b) .....................................................................................................5

**Rules**

Fed. R. Bankr. P. 6009 ....................................................................................................24

Fed. R. Bankr. P. 8010(b) ..........................................................................................12, 13

Fed. R. Bankr. P. 8013 ......................................................................................................2

Fed. R. Civ. P. 12 ...........................................................................................................16

Fed. R. Civ. P. 55 ...........................................................................................................16

LR 201 ............................................................................................................................13

**Legislative History**

H.R.Rep. No. 595, 95th Cong. 1st Sess. 380 (1977) .....................................................27

U.S. Code Cong. & Admin.News 1978, p. 6336 ............................................................27

S.Rep. No. 989, 95th Cong. 2d Sess. 84 (1978) ............................................................27

U.S. Code Cong. & Admin.News 1978, pp. 5787, 5870 ...............................................27

**Article**

Jonathan T. Edwards, The Crossroads: The Intersection of State Law Remedies and
Bankruptcy, 18 J.Bankr.L & Prac. 2, Art. 4 (April 2009) ...............................................5

Mr. Stephen Asbaty ("Asbaty"), Mr. Lawrence Bohn ("Bohn"), Mr. Joel Cutler ("Cutler"), Mr. Mark Delcher ("Delcher"), Ms. Wendy Lahaye ("Lahaye"), Mr. Ruben Pinchanski ("Pinchanski"), Mr. Martyn Redgrave ("Redgrave"), and Ms. Sharen Turney ("Turney") (collectively, "Appellants") submit this appellate brief pursuant to Fed. R. Bankr. P. 8010 in support of Appellants' appeal from the order of the Bankruptcy Court denying Appellants' Motion to Dismiss Involuntary Case (the "Order Denying Dismissal") commenced against N2N Commerce, Inc. ("N2N"), and the Bankruptcy Court's resulting entry of the order for relief in such case (the "Order for Relief").

## BASIS OF APPELLATE JURISDICTION

Pursuant to 28 U.S.C. § 158(a), this Court has jurisdiction to hear Appellants' appeal from the Order Denying Dismissal and the Order for Relief. Appellants timely filed their Notice of Appeal on October 22, 2009, at which time Appellants elected to have their appeal heard by this Court rather than by the Bankruptcy Appellate Panel.

## ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW

### Issues

1.    Did the Bankruptcy Court have subject matter jurisdiction to enter the Order for Relief?

2.    Did the Bankruptcy Court err in determining that Appellants lacked standing to seek dismissal of the involuntary Chapter 7 case?

3.    Did the Bankruptcy Court err in denying Appellants' motion to dismiss the involuntary Chapter 7 case?

## Standard of Review

"On an appeal the district court … may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Findings of fact by a bankruptcy court are reviewed for clear error, and its conclusions of law are subject to *de novo* review. In re Nosek, 544 F.3d 34, 43 (1st Cir. 2008).

The Bankruptcy Court held no evidentiary hearing and made no findings of fact. Therefore, all aspects of its decision are subject to *de novo* review, including inferences that reasonably may be drawn from the record. Arcari v. Marder, 225 B.R. 253, 254-55 (D. Mass. 1998) (Tauro, J.).

## STATEMENT OF THE CASE

### Overview of Proceeding

N2N Commerce, Inc., the Debtor, is a start-up company that failed to fulfill its business plan. As a means to wind up its affairs, N2N made an assignment for the benefit of creditors (the "Assignment") in January 2008. Appellees include three creditors who expressly assented to the Assignment and, after agreeing to relinquish any claims against N2N—including any claim to file this very bankruptcy proceeding—received distributions from the assignee under the Assignment (the "Assignee"). For convenience, they will be referred to as the "Three Creditors." Appellants are individuals sued or targeted for suit by the Assignee. As former directors, officers or employees of N2N, Appellants are also creditors of N2N in that they hold contingent claims for indemnification. For convenience, they will be referred to as the "Former D&Os."

In consultation with the Three Creditors, the Assignee liquidated all tangible assets of N2N. He made a cash distribution to creditors who had contractually relinquished their right to file an involuntary bankruptcy and assented to the Assignment, including the Three Creditors.

He brought suit against certain of the Former D&Os in state court. He sent a demand letter to certain of the Former D&Os alleging that they had breached their fiduciary duties to N2N, a Delaware corporation. Those Former D&Os brought suit in Delaware Chancery Court for a declaratory judgment that they had done no wrong.

Nine days later, with the support of the Three Creditors, the Assignee filed a voluntary Chapter 7 petition on behalf of N2N. The Bankruptcy Court dismissed the petition upon motion of the Former D&Os, ruling expressly and unequivocally that the Former D&Os had standing to seek the dismissal. Recognizing that standing exists when a person's pecuniary interests are affected, the Bankruptcy Court held that the Former D&Os' "rights will be affected if the bankruptcy case remains in this Court and the Assignee proceeds with litigation against them." In re N2N Commerce, Inc., 405 B.R. 34, 39 (Bankr. D. Mass. 2009). As to the merits, the Bankruptcy Court interpreted the assignment agreement as a matter of law, concluding that, "at the time [the parties] executed the Assignment for the benefit for creditors, N2N had considered two options, the filing of a Chapter 7 bankruptcy petition, and, alternatively, an assignment for the benefit of creditors, and its Board chose the latter option." Id. at 41.

Nearly three months later, the Three Creditors filed an involuntary Chapter 7 petition against N2N. The Former D&Os filed a motion to dismiss. This time the Bankruptcy Court declined to dismiss, inexplicably ignoring its prior ruling and holding that the very same people who had standing in the voluntary case because they _might_ be sued in the voluntary case, did not have standing in the involuntary case because they _might not_ be sued in the involuntary case. In re N2N Commerce, Inc., 2009 WL 3317274 at *2 (Bankr. D. Mass. 2009). What is more, even if the Bankruptcy Court was correct in its two, diametrically opposed standing rulings, the Bankruptcy Court nonetheless failed to address the fact that it did not have subject matter

jurisdiction over the case because a jurisdictional prerequisite—that three creditors with non-contingent and undisputed claims file the involuntary petition—did not exist. This is principally because the very assignment agreement that the Bankruptcy Court ruled as a matter of law signaled an intention to proceed with an assignment rather than a bankruptcy provided unequivocally that the Three Creditors relinquished their claims when they signed the agreement and accepted the distribution.

The Former D&Os then brought this appeal. At issue in this appeal is whether the Bankruptcy Court was required to examine its own subject matter jurisdiction when its attention was directed to a basic defect in the involuntary petition or was free to ignore that defect because N2N did not contest the petition. Also at issue is whether the Three Creditors are estopped from commencing an involuntary case against N2N, because they assented to, participated in, received distributions under, and never tried to rescind their assent to the Assignment.

**Factual Background**

N2N was a start-up company founded in June 2006 to develop a revolutionary software platform to facilitate high-speed, internet-based retail sales transactions and to market that platform to retailers around the world. Appellants Bohn, Cutler, Pinchanski, Redgrave and Turney constituted all of the directors of N2N. Appellants Asbaty, LaHaye and Pinchanski were N2N officers, and Appellant Delcher was an N2N employee.

By December 2007, N2N's financing was depleted and, because it was a pre-revenue, start-up company, it was forced to close its doors. N2N's board of directors (the "Board") evaluated the options available to the company for winding up its business and liquidating and distributing its assets. The options the Board considered included filing a Chapter 7 petition or making an assignment for benefit of creditors. Chapter 7 is the Bankruptcy Code provision

governing liquidations. An assignment for benefit of creditors is an out-of-court analog to Chapter 7 whereby a fiduciary (the assignee) takes over all the debtor's assets (including causes of action), liquidates the assets according to his best judgment, and distributes the proceeds *pro rata* to general unsecured creditors after paying or otherwise resolving secured and priority claims. See In re N2N Commerce, Inc., 405 B.R. 34, 42 (Bankr. D. Mass. 2009) (citing Jonathan T. Edwards, *The Crossroads: The Intersection of State Law Remedies and Bankruptcy*, 18 J.Bankr.L & Prac. 2, Art. 4 (April 2009)).

Assignments for the benefit of creditors have become a popular means of liquidating defunct businesses because they are generally quicker and less costly than Chapter 7, resulting in a better net distribution to creditors. Id. at 42, 43. Just like a bankruptcy trustee, an assignee for the benefit of creditors can recover preferences to insiders,[1] can recover fraudulent transfers,[2] and can pursue any pre-bankruptcy causes of action belonging to the debtor such as claims that directors and officers breached their fiduciary duties. Indeed, the Bankruptcy Code expressly recognizes that an assignment for the benefit creditors may be maintained notwithstanding a subsequent involuntary petition against the assignor-debtor if the assignment occurred more than 120 days prior to the involuntary petition.[3] A formal bankruptcy proceeding may be preferable to an assignment in some situations, for example, where there are valuable contract rights that can only be preserved through the Bankruptcy Code[4] or where there have been substantial

---

[1] M.G.L. c. 109A, § 6(b). The assignee must take an assignment of such claims from creditors (as the Assignee did here).
[2] M.G.L. c. 109A, §§ 5, 6(a), which are identical in all material respects to the bankruptcy fraudulent transfer provisions of 11 U.S.C. § 548.
[3] 11 U.S.C. §§ 303(h)(2), 543(d)(2).
[4] Section 365 of the Bankruptcy Code prevents termination of certain contracts by reason of the debtor's financial condition and in some circumstances overrides contractual prohibitions on assignment.

preferential transfers to non-insiders, which cannot be recovered outside bankruptcy.[5]  Those circumstances were never present in N2N's case.  Although there are allegations (all disputed) of preferences to insiders, fraudulent transfers, and pre-bankruptcy causes of action for breach of fiduciary duty, each and every one of those claims can be pursued by the Assignee outside of a bankruptcy case.

After deliberation, the Board determined not to authorize N2N to file for bankruptcy, but instead unanimously voted on or about January 3, 2008 to enter into the Assignment, which the Board had concluded was the most appropriate liquidation vehicle.  The Assignment was effected on January 4, 2008 when N2N, as assignor, entered into an Agreement for the Assignment for the Benefit of Creditors with the Assignee (the "Assignment Contract").[6]  As the Assignment Contract states, "*Debtor … wishes to provide a mechanism for liquidation of its assets and distribution of the proceeds to its creditors and has determined that the most efficient and economical mechanism to accomplish this purpose is to make an assignment for the benefit of its creditors*."[7]  Pursuant to the Assignment Contract, all of N2N's assets were transferred to the Assignee for orderly liquidation.

The Assignee liquidated N2N's assets over a period of several months, as reported by the Assignee in the voluntary case.[8]  The Assignee's liquidation efforts included a sealed bid auction sale of N2N's intellectual property for $102,500, an auction of office furniture and equipment

---

[5] Section 547 of the Bankruptcy Code permits the bankruptcy estate to recover certain pre-bankruptcy payments or other transfers that had the effect of preferring certain creditors.  Certain states have laws permitting recovery of preferences even to non-insiders, but Massachusetts is not one of them.
[6] A copy of the Assignment Contract is included in the Designation of Record and Statement of Issues on Appeal filed by the Appellants and docketed in this appeal on December 7, 2009 [Docket No. 4], at "Designated No. 3", at Exhibit B.  (Appellants' Memorandum in Support of Motion to Dismiss Involuntary Case, at Exhibit B.)  Hereinafter, citations to the record designated by Appellants shall be referred to by "App. Rec. [Designated #]" together with appropriate reference to a particular page, paragraph, section, or exhibit.
[7] Assignment Contract, at p. 1, ¶ B (emphasis added).  [App. Rec. 3, at Exhibit B, p. 1, ¶ B]
[8] App. Rec. 3, at pp. 4, 5.

(including computer equipment) for $265,000 in net proceeds, and private sales of other equipment for $110,467.98. The Assignee also collected a landlord deposit refund ($33,780), a telephone refund ($13,777), and an insurance refund ($11,324). The Assignee undertook a claims examination process to liquidate claims for distribution, and investigated possible causes of action to be brought on behalf of creditors. By January 2009, the Assignee had expended nearly $300,000 in legal fees administering the Assignment.

In addition to the significant time and effort spent liquidating assets and administering the Assignment as summarized above, the Assignee in August 2008 distributed $350,000 to creditors. In order to receive a distribution under the Assignment, a creditor was required to execute and deliver an assent to the Assignment, and thereby become an "Assenting Creditor" under the Assignment.[9] In electing to become an Assenting Creditor, a creditor relinquished its claim against N2N in exchange for the right to receive a distribution under the Assignment.[10] It is undisputed that the Three Creditors assented to the Assignment, thereby becoming Assenting Creditors. As the Assignment they agreed to states: "Each Assenting Creditor accepts in lieu of its claim the rights acquired hereunder … ." Assignment Contract, at § 5.4.[11] It is also undisputed that the Three Creditors received their respective shares of the $350,000 distributed by the Assignee in August 2008.

Months after completing the liquidation of assets and distributing $350,000 to Assenting Creditors, the Assignee, through counsel, sent the Former D&Os draft demand letters alleging

---

[9] Assignment Contract at § 5.1 ("A Creditor shall become an Assenting Creditor and a party to this A/F/B/C and a beneficiary hereunder by filing with the Assignee a written assent … ."). [App. Rec. 3, at Exhibit B, § 5.1] The form of assent to the Assignment Contract, attached as Exhibit A thereto, provides that the Assenting Creditor "agrees to accept those dividends payable under the Assignment in full and final settlement of all indebtedness due from the above-named debtor [N2N]." [App. Rec. 3, at Exhibit B, at last page (Exhibit A)]

[10] Assignment Contract at § 5.4 (Section 5.4 of the Assignment Contract provides that "Each Assenting Creditor accepts in lieu of its claim the rights acquired hereunder and agrees that this A/F/B/C may be pleaded as a defense or bar to any such suit or other proceeding."). [App. Rec. 3, at Exhibit B, § 5.4]

[11] App. Rec. 3, at Exhibit B, § 5.4.

that the Former D&Os (other than Delcher) had breached their fiduciary duties as N2N directors and/or officers while N2N was insolvent and/or in the zone of insolvency, including by committing fraud and waste. The letters demanded money from the Former D&Os.

On December 17, 2008, the Assignee commenced a civil action against certain officer and employee Appellants in Massachusetts Superior Court for Suffolk County. See Finn v. Asbaty, et al., Civil Action No. 08-5575-BLS2 (the "Superior Court Action").[12] In the Superior Court Action, the Assignee alleged that bonuses and earmarked severance payments that certain Appellants had received from N2N were recoverable as fraudulent transfers under the Massachusetts Uniform Fraudulent Transfer Act.[13] This lawsuit did not assert the claims for breach of fiduciary duty that were the subject of the previous demand letters.

On January 5, 2009, the Former D&Os commenced a declaratory judgment action in the Court of Chancery for the State of Delaware. See Pinchanski, et al. v. Finn, Civil Action No. 4266-CC (the "Delaware Action").[14] The Former D&Os did not seek money damages from Finn as Assignee of N2N; rather, they sought a declaration that each of them acted appropriately under Delaware law in their roles as N2N officers and/or directors.[15] Specifically, they have asked the Delaware court to enter a declaratory judgment that—contrary to the allegations of the Assignee's demand letters—the Former D&Os did not breach their fiduciary duties and did not commit fraud or waste.[16]

On January 14, 2009, the Assignee filed a voluntary petition commencing a Chapter 7 case for N2N as debtor.[17] Why did the Assignee—and the Three Creditors with whom he

---

[12] App. Rec. 3, at Exhibit C (copy of the Complaint initiating the Superior Court Action).
[13] Id., at ¶¶ 47-74.
[14] App. Rec. 3, at Exhibit D (copy of the Complaint initiating the Delaware Action).
[15] Id., at ¶¶ 24-32 and prayer for relief.
[16] Id.
[17] App. Rec. 12 (copy of voluntary petition).

consulted before filing the petition[18]—seek at this advanced stage of the liquidation process to cast away the Assignment to which the Three Creditors and many others had assented, and proceed instead in the Bankruptcy Court?  The Assignee and the Three Creditors explained to the Bankruptcy Court that they sought to consolidate N2N litigation in a single forum, namely, the Bankruptcy Court.[19]  Since the Assignee himself had commenced litigation in Massachusetts Superior Court, this statement can only mean that the Assignee and the Three Creditors preferred that the Bankruptcy Court rather than the Delaware Chancery Court adjudicate the corporate law claims of N2N (a Delaware corporation) against the Former D&Os.

The Former D&Os filed a motion to dismiss the voluntary case (the "Prior Motion to Dismiss"), including on the ground that the Assignee lacked authority to file it.[20]  The Assignee—joined by two of the Three Creditors, NaviSite, Inc. ("NaviSite") and Optaros, Inc. ("Optaros")—opposed dismissal.  They claimed (among other arguments) that the Former D&Os lacked standing to seek dismissal.[21]  After a hearing, the Bankruptcy Court granted the Prior Motion to Dismiss.  In its Memorandum Opinion entered May 1, 2009, the Bankruptcy Court held that the Former D&Os had standing to seek dismissal of the voluntary case, and that the Assignee lacked authority to commence it.  In re N2N Commerce, Inc., 405 B.R. 34, at 39, 43 (Bankr. D. Mass. 2009).[22]  As noted by the Bankruptcy Court, the language of the Assignment Contract "manifest[s] the intention of the Board for the Assignment to serve as the exclusive vehicle for winding up the affairs of N2N."  Id. at 43.  Accordingly, by order entered May 1, 2009, the Bankruptcy Court dismissed the voluntary case.[23]

---

[18] App. Rec. 3, at p. 7 (citing to App. Rec. 26, at pp. 53-54 and 57-58).
[19] App. Rec. 4, at  ¶¶ 14, 72.
[20] App. Rec. 14.
[21] App. Rec. 20.
[22] The memorandum opinion is also found at App. Rec. 22.
[23] App. Rec. 23.

On July 13, 2009, the Three Creditors filed an involuntary petition commencing a Chapter 7 case against N2N as debtor.[24] The Former D&Os again moved for dismissal. The Former D&Os asserted that the Three Creditors were not eligible petitioning creditors under Section 303, because: (i) having assented to the Assignment, the Three Creditors no longer held claims against N2N; (ii) alternatively, any claims that the Three Creditors might hold were contingent; and (iii) the claim of one of the Three Creditors, TIBCO Software, Inc. ("TIBCO"), was subject to a bona fide dispute as to amount.[25] The Former D&Os also asserted that the Three Creditors were estopped from filing the involuntary petition by reason of their participation in the Assignment. As authority for dismissal, the Former D&Os relied on Sections 305(a) and 707(a) of the Bankruptcy Code, as well as Section 303.[26]

NaviSite and Optaros objected to the Former D&Os' motion to dismiss the involuntary case, contending (among other arguments) that the Former D&Os lacked standing to seek dismissal of the involuntary case.[27] The Former D&Os replied that the issue of their standing to seek dismissal of N2N's bankruptcy case had already been determined when the Bankruptcy Court determined that N2N had standing to seek dismissal of the voluntary case involving N2N as debtor.[28]

After hearing oral argument on the Former D&Os' motion to dismiss the involuntary case, and without conducting an evidentiary hearing, the Bankruptcy Court held that the Former D&Os lacked standing to seek dismissal of the involuntary case.[29] The Bankruptcy Court also ruled that maintenance of the involuntary case was in the best interest of creditors, though it did

---

[24] App. Rec. 1 (copy of involuntary petition).
[25] App. Rec. 2, 3 (motion to dismiss and supporting memorandum).
[26] Section 305(a), however, is not at issue in this appeal.
[27] App. Rec. 4. TIBCO did not join NaviSite and Optaros in opposing the motion to dismiss.
[28] App. Rec. 5.
[29] App. Rec. 7, also reported at In re N2N Commerce, Inc., 2009 WL 3317274 (Bankr. D. Mass. 2009).

not specifically address the factors relevant to dismissal under Section 305(a) or 707(a) of the Bankruptcy Code. Coincident with its rulings, the Bankruptcy Court entered the Order Denying Dismissal and the Order for Relief.[30] The Former D&Os filed this appeal.

**SUMMARY OF ARGUMENT**

*Subject Matter Jurisdiction.* The Bankruptcy Court erred in exercising jurisdiction over the bankruptcy case even though the court's attention had been directed to the Three Creditors' failure to meet the basic requirements for an involuntary petition. Section 303(b) of the Bankruptcy Code requires that an involuntary petition be signed by three qualified creditors. In order to qualify, each creditor must actually hold a claim against the debtor and the claim must not be subject to a bona fide dispute as to liability or amount. Here the Three Creditors no longer held claims; under the express terms of the Assignment, they had relinquished their claims against N2N by assenting to the Assignment. Even assuming they still held claims against N2N, TIBCO's claim was subject to a bona fide dispute as to amount. The requirements of Section 303(b) are absolute prerequisites for commencing an involuntary bankruptcy case. They serve as the parties' ticket of admission to federal court. If these requirements are not met, the bankruptcy court lacks subject matter jurisdiction over the case. Like all federal courts, a bankruptcy court must examine its own subject matter jurisdiction, especially when the court's attention is directed to a potential failure of jurisdiction. The Bankruptcy Court erred in ignoring—not even ruling upon—the defects in its jurisdiction raised by the Former D&Os.

*Standing.* The Bankruptcy Court side-stepped the issue of subject matter jurisdiction by erroneously determining that the Former D&Os lacked standing to seek dismissal of the involuntary case. The Bankruptcy Court improperly failed to give collateral estoppel effect to its own prior decision in the voluntary case that the Former D&Os did have standing to seek

---

[30] App. Rec. 8, 9.

11

dismissal of an N2N bankruptcy.  In so doing, the Bankruptcy Court relied on a purported distinction between the voluntary case and the involuntary case that does not exist.  And regardless of the Former D&Os' standing under Section 303 of the Bankruptcy Code, it is clear that they had standing to seek dismissal under Section 707(a) of the Bankruptcy Code.

*Estoppel*.  The Bankruptcy Court erred in determining that the Three Creditors were not estopped from filing an involuntary petition against N2N.  The Bankruptcy Court's determination was premised on the fact that the Three Creditors were not parties to the pending litigation involving the Former D&Os and the Assignee.  The Bankruptcy Court ignored that the basis for estoppel is the Three Creditors' assent to the Assignment, not whether they were involved as parties in litigation between the Assignee and the Former D&Os.

## ARGUMENT

### A. The Bankruptcy Court Erred by Failing to Review its Own Subject Matter Jurisdiction to Enter the Order for Relief

#### 1. The Bankruptcy Court was Required to Review its Jurisdiction Regardless of Whether it was Questioned by a Party with Standing

It is well-settled that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."  United States v. Cotton, 535 U.S. 625, 630 (2002).  Federal courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).

Bankruptcy jurisdiction in federal courts is created under and delimited by 28 U.S.C. § 1334, which provides in pertinent part:[31]

---

[31] Section 1334 is presented in its entirety in the Addendum to this brief, pursuant to Fed. R. Bankr. P. 8010(b).

### 1334. Bankruptcy cases and proceedings

    (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

    (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.[32]

Thus, Congress has provided that the bankruptcy jurisdiction of the district court—which the district courts may delegate to the bankruptcy courts[33]—extends to "cases under title 11" and to "civil proceedings arising under title 11, or arising in or related to cases under title 11."  Each of these bases for jurisdiction requires the same fundamental predicate:  a case under title 11, that is, the Bankruptcy Code.

For there to be a case under the Bankruptcy Code, the requirements of either Section 301 (voluntary cases), 302 (joint cases) or 303 (involuntary cases) must be met.  11 U.S.C. §§ 301-303.  Having been commenced by an involuntary petition, the instant case is covered by Section 303 of the Bankruptcy Code, which provides in pertinent part:

    (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

    (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; …

11 U.S.C. § 303(b).[34]  Section 303(b) resembles the statute establishing this Court's diversity

---

[32] Section 1334(e)(2) is not relevant to the issues in this case.  Section 1334 is presented in its entirety in the Addendum to this brief, pursuant to Fed. R. Bankr. P. 8010(b).

[33] 28 U.S.C. § 157(a).  This Court, like every other district court, refers bankruptcy cases to the bankruptcy court.  LR 201.  Thus, bankruptcy cases are filed in and heard by the bankruptcy court absent withdrawal of the reference by this Court.

[34] Section 303 is presented in its entirety in the Addendum to this brief, pursuant to Fed. R. Bankr. P. 8010(b).

jurisdiction[35] by establishing the required attributes of the parties[36] and a jurisdictional minimum amount at issue. By its terms, Section 303(b) provides that commencement of an involuntary case is dependent on the filing of a petition by three or more entities holding claims with particular characteristics. If the entities do not hold claims with the particular characteristics, then the petition is not one that may commence an involuntary case. If the petition is insufficient to commence an involuntary case, then there is no case over which the bankruptcy court has jurisdiction. 28 U.S.C. § 1334(a) (court has jurisdiction over *cases* under title 11) (emphasis added).

Consistent with the statutory scheme, many courts have held that the requirements of Section 303(b) are jurisdictional. See In re BDC 56 LLC, 330 F.3d 111 (2d Cir. 2003); In re Elsa Designs, Ltd., 155 B.R. 859, 863 (Bankr. S.D.N.Y. 1993); In re Paczesny, 283 B.R. 715, 718 (Bankr. N.D. Ill. 2002); In re Audio Visual Workshop, Inc., 211 B.R. 154, 158 (Bankr. S.D.N.Y. 1997); In re New Mexico Properties, Inc., 18 B.R. 936, 939-40 (Bankr. D. N.M. 1982). As the Court of Appeals for the Second Circuit recently explained:

> Whether an alleged debtor is properly before the bankruptcy court in an involuntary case is a threshold determination that should be made at the earliest possible stage of the proceedings. One of the requirements to bringing such a petition is that the petitioning creditors' claims are free from bona fide dispute. Any creditor wishing to invoke the bankruptcy court's jurisdiction in an involuntary case should be required to demonstrate at the earliest practicable point that its petition satisfies this requirement.

In re BDC 56 LLC, 330 F.3d at 118. Thus, said the court: "We believe the more sound view is that the requirement is subject matter jurisdictional, and now so hold." Id.

Certain courts have held that the requirements of Section 303(b) are not jurisdictional. See Trusted Net Media Holdings, LLC v. The Morrison Agency (In re Trusted Net Media

---

[35] 28 U.S.C. § 1332.
[36] See also 11 U.S.C. § 109(b), which provides (with exceptions not relevant here) that any individual or corporation may be a debtor in a Chapter 7 bankruptcy case.

Holdings, LLC), 550 F.3d 1035, 1046 (11th Cir. 2008); Rubin v. Belo Broad. Corp. (In re

Rubin), 769 F.2d 611, 614 n.3 (9th Cir. 1985); In re Mason, 709 F.2d 1313, 1318-19 (9th Cir.

1983). These courts point to Section 303(d), providing solely for the debtor to answer the

petition, and to Section 303(h), which provides for the bankruptcy court to order relief against

the debtor if the petition is not timely contested. These courts reason that these provisions

effectively permit the debtor to waive the requirements of Section 303(b), therefore, those

requirements must not be jurisdictional.

The flaw in this proposition is that it imputes to Congress an intention, through enactment

of the procedural rules contained in Sections 303(d) and (h), to override the entire constitutional

and statutory scheme of federal jurisdiction. Fundamental to the American constitutional system

is the principle that federal courts are courts of limited jurisdiction. They possess only that

power authorized by Constitution and statute. Willy v. Coastal Corp., 503 U.S. 131, 136-37

(1992); Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). In the bankruptcy

context, the Supreme Court has repeatedly emphasized that bankruptcy jurisdiction is defined

and limited by statute—28 U.S.C. § 1334, which, as discussed above, requires that there be a

"case under title 11" in order to support federal jurisdiction. E.g., Celotex Corp. v. Edwards, 514

U.S. 300, 307 (1995). Consistent with the principle that "subject-matter jurisdiction, because it

involves a court's power to hear a case, can never be forfeited or waived," United States v.

Cotton, 535 U.S. 625, 630 (2002), the Supreme Court has emphasized that "no action of the

parties can confer subject-matter jurisdiction upon a federal court." Ins. Corp. of Ireland, Ltd. v.

Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982). This rule applies with the same

force in bankruptcy as in other contexts. In re Combustion Engineering, Inc., 391 F.3d 190, 228-

29 (3d Cir. 2004) (denying attempt to create bankruptcy subject matter jurisdiction where it did

not otherwise exist).  Given the importance of limited federal court jurisdiction and the non-waivability of defects in subject matter jurisdiction, it is not surprising that the Supreme Court has imposed on federal courts an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).  This requirement applies to bankruptcy courts just as much as it does to other federal courts.  E.g., U.S. v. Kearns (In re Kearns), 219 B.R 823, 827 (B.A.P. 8th Cir. 1998).

The proposition that Congress meant to sweep away these basic principles of federal jurisdiction when it enacted Section 303(d) and (h) of the Bankruptcy Code—the involuntary-bankruptcy-case equivalent of Fed. R. Civ. P. 12 (providing for the defendant to answer or otherwise contest a complaint) and Fed. R. Civ. P. 55 (providing for entry of default judgment if the defendant does not timely plead in response to the complaint)—refutes itself.  The requirements of Section 303(b) for a valid involuntary petition, which are the petitioning creditors' ticket to enter federal court, do not evaporate simply because the party against whom the petition is directed chooses not to contest the petition.  Here, the Bankruptcy Court failed to address the Supreme Court case law just discussed.  Instead, the Bankruptcy Court relied on a deeply flawed bankruptcy court decision, In re MarketXT Holdings, 347 B.R. 156 (Bankr. S.D.N.Y. 2006).  Though bound by the Second Circuit's holding in In re BDC 56 LLC, 330 F.3d 111 (2d Cir. 2003), to the effect that the requirements of Section 303(b) are subject-matter jurisdictional, the MarketXT court nevertheless held—based on Section 303(d) and (h)—that the lack of subject matter jurisdiction was waived if the debtor failed to contest the involuntary petition.  Thus, the bankruptcy court effectively ruled that its subject matter jurisdiction over the involuntary case was established by consent of the debtor even though the petitioning creditors

16

failed to meet the jurisdictional requirements. The <u>MarketXT</u> decision is unpersuasive since it fails to even mention, let alone address, the ironclad requirement for federal courts to examine their own subject matter jurisdiction and the principle that the parties themselves may not confer subject matter jurisdiction.

Consider how the rule adopted by the Bankruptcy Court would play out if applied to federal civil litigation. A plaintiff might file a complaint stating non-federal claims, and alleging that both plaintiff and defendant are citizens of Massachusetts, or that the amount in controversy is less than $75,000. If the defendant chose not to challenge this Court's jurisdiction, or defaulted entirely, does that mean this Court should overlook the obvious lack of jurisdiction if it comes to the Court's attention? Or suppose the plaintiff's complaint, stating non-federal claims, alleges that plaintiff is a citizen of Rhode Island and defendant is a citizen of Massachusetts, and someone other than the defendant directs this Court's attention to the fact that plaintiff is actually a Massachusetts citizen? Should this Court ignore its lack of jurisdiction—and the apparent collusion between plaintiff and defendant to bring the case in federal court—because it was pointed out by a person who lacked "standing"? It is crystal clear that this Court must dismiss the case whenever it discovers, and by whatever means, that there is no subject matter jurisdiction. Congress cannot have intended a different rule for the bankruptcy courts.

Certainly no such intention can be imputed to Section 303(d) and (h). These provisions serve important purposes that have nothing to do with any mistaken inference that they are intended to permit federal jurisdiction to be established by collusion or default. Section 303(d)[37]

---

[37] Section 303(d) provides: "The debtor, or a general partner in a partnership debtor that did not join in the petition, may file an answer to a petition under this section." It is not clear that this language, which is permissive, should be interpreted to deny standing to parties such as creditors (who have standing on just about every other issue in a bankruptcy case) to be heard concerning an involuntary petition, although courts have construed it that way. But even if Section 303(d) does create a restriction on standing, courts are required to examine their own subject matter jurisdiction regardless of whether the issue is raised by a party with standing.

establishes that the debtor may answer an involuntary petition, as well as the non-obvious point that a general partner may answer an involuntary petition when the debtor is a partnership. The section does not say and cannot fairly be read to imply that the bankruptcy court may ignore its lack of subject matter jurisdiction unless raised by someone who is a proper person to answer the petition. Section 303(h)[38] merely establishes what the petitioning creditors must prove if the petition is controverted—namely, that either the debtor is not paying its debts or that a custodian (such as an assignee for benefit of creditors) has taken over the debtor's assets—along with the provision that the petition should be granted if not controverted. It reads too much into Section 303(h) to say that it is intended to override Section 303(b)'s requirement of three qualified creditors owed the jurisdictional minimum amount.

In sum, the Bankruptcy Court—just like this Court and every other court in the federal system—was required to examine its own subject matter jurisdiction, specifically, whether the involuntary petition had been signed by three qualified creditors. The Bankruptcy Court erred in failing to do so.

## 2.        The Three Creditors Do Not Satisfy Section 303(b)'s Requirements

The Three Creditors failed to meet the requirements of Section 303(b), requiring that an involuntary petition be signed "by three or more entities, each of which is . . . a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(b)(1). Here the Three Creditors do not qualify because, as

---

[38] Section 303(h) states: "If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if--
       (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount; or
       (2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession."

established by the uncontradicted record, (1) they do not hold claims against N2N at all, (2) if they do hold claims, such claims are contingent as to liability, and (3) at least one of the three claims is subject to a bona fide dispute as to amount.

### a.    The Three Creditors do not hold claims

The Three Creditors do not hold claims against N2N.  Indeed, they expressly relinquished their claims against N2N in order to receive the benefits of the Assignment.  Section 5.4 of the Assignment provides that "Each Assenting Creditor accepts *in lieu of its claim* the rights acquired hereunder and agrees that this A/F/B/C may be pleaded as a defense or bar to any such suit or other proceeding."[39]  (Emphasis added.)  Section 5.3 of the Assignment Contract confirms this:  "The submission of an assent to this A/F/B/C shall not operate as a waiver, release or suspension of any rights by way of guaranty, security or otherwise which such Assenting Creditor may have against *any person other than [N2N].*"[40]  (Emphasis added.)  The Assignment is a contract among N2N, the Assignee and the Assenting Creditors.[41]  It is undisputed that the Three Creditors are Assenting Creditors under the Assignment.  Accordingly, they have waived their claims against N2N, and for this reason they fail to meet Section 303(b)'s requirement that only "the holder of a claim . . . or an indenture trustee representing such a holder" may sign an involuntary petition.  11 U.S.C. § 303(b)(1).

### b.    If the Three Creditors hold claims, such claims are contingent

The only claims that the Three Creditors could possibly hold against N2N are contingent, and thus ineligible under Section 303(b).  The Three Creditors claim that they entered into the

---

[39] App. Rec. 3, at Exhibit B, § 5.4.
[40] Id., at § 5.3.
[41] "A Creditor shall become an Assenting Creditor *and a party to this A/F/B/C* and a beneficiary hereunder by filing with the Assignee a written assent substantially in the form of Exhibit A annexed hereto . . . ."  Assignment Contract, § 5.1 (emphasis added).  It is undisputed that each of the Three Creditors became an Assenting Creditor and, indeed, has received a distribution from the Assignee.

Assignment without full knowledge of material facts concerning potential claims of N2N against the Former D&Os.[42]  If true, which the Former D&Os dispute,[43] at most this might give the Three Creditors the right to rescind the Assignment, thus restoring their claims against N2N.  As of now, however, any claim by the Three Creditors against N2N is contingent on a court order directing rescission (and, of course, restoration to N2N of the distributions that the Three Creditors have received) or an equivalent adjudication in favor of the Three Creditors that they are not bound by their contractual release of claims against N2N.  Any such judicial proceeding would be hotly contested.  Neither contingent nor disputed claims qualify as a basis for an involuntary petition under Section 303(b)(1).  The Three Creditors cannot satisfy the requirement of Section 303(b)(1) that their claims be "not contingent as to liability or the subject of a bona fide dispute . . . ."

### c.  One of the Three Creditors holds a disputed claim

Separate and apart from the arguments just raised, TIBCO's claim is disputed.  The involuntary petition signed by TIBCO asserts a claim against N2N in the amount of $362,890.01.[44]  The schedule of N2N's liabilities filed with the Bankruptcy Court in the voluntary case lists the amount of TIBCO's claim as $246,587.65.[45]  This schedule was prepared by the Assignee pursuant to his fiduciary duty to determine the correct amount of the Assenting Creditors' claims against N2N.  There can be no doubt that the discrepancy in the amount of TIBCO's claim is a bona fide dispute.  Thus, TIBCO's claim fails to meet the requirement of Section 303(b) that the claims of all three petitioning creditors must be "not . . . the subject of a bona fide dispute as to liability or amount."  11 U.S.C. § 303(b)(1).

---

[42] App. Rec. 4, at ¶¶ 44, 47, and 65.
[43] App. Rec. 5, at pp. 11, 12; App. Rec. 6, at ¶¶ 4-9.
[44] App. Rec. 1, at p. 4.
[45] App. Rec. 13, at p. 23 (of 29). [Schedule F, Creditors Holding Unsecured Nonpriority Claims, at sheet 14 (of 17)]

This dispute over the amount of TIBCO's claim is by itself sufficient to defeat the involuntary petition. See In re Euro-American Lodging Corp., 357 B.R. 700, 712 at n.8, 714 at n.11 (Bankr. S.D.N.Y. 2007) (any dispute regarding amount that arises from the same transaction should render claim subject to bona fide dispute, as the meaning of bona fide dispute was clarified, and apparently expanded, by 2005 amendments to section 303(b)); In re Orlinsky, 2007 WL 1240207 (Bankr. S.D. Fla. 2007) (creditors holding partially disputed claims hold claims subject to bona fide dispute as to liability or amount). True, certain courts have held that a creditor may sign an involuntary petition based on a claim that is disputed as to amount so long as it is not disputed as to liability. See, e.g., In re DemirCo Holdings Inc., 2006 WL 1663237 (Bankr. C.D. Ill. 2006) (bona fide dispute regarding portion of creditor's claim does not disqualify creditor; bona fide dispute is relevant only if it has potential to reduce total amount of petitioning claims below statutory threshold); In re Dilley, 331 B.R. 1, 6 (Bankr. D. Me. 2005), rev'd sub nom. Metz v. Dilley (In re Dilley), 339 B.R. 1 (B.A.P. 1st Cir. 2006) (court suggested, in dicta, that creditor whose claim was only partially disputed could qualify to be petitioning creditor under Section 303(b), but cited, in support of proposition, case decided prior to 2005 amendments to Section 303(b), which added language specifying that the bona fide dispute could be as to liability or amount). These contrary cases fail to give effect to the words "as to liability or amount" which Congress added in 2005 after the words "bona fide dispute."[46] The reluctance of certain bankruptcy courts to depart from past practice is no excuse for them to ignore an unambiguous statutory mandate.[47]

---

[46] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L 109-8, Title XII, § 1234(a)(1).

[47] As a fundamental principle of statutory construction, courts must follow the unambiguous words of a statute unless it would lead to an absurd result. Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000). Construing Section 303(b) as written does not lead to an absurd result. Far from it. Congress could plausibly conclude that when a claim is disputed, whether in whole or in part, its holder may have motives for filing an involuntary petition other than whether such petition is in the best interest of creditors generally.

In sum, the Bankruptcy Court erred in refusing to examine its own subject matter jurisdiction, and instead basing its decision on the Former D&Os' alleged lack of standing to seek dismissal. The Bankruptcy Court was required to examine its own subject matter jurisdiction, and to determine that because the Three Creditors do not qualify under Section 303(b)(1), the Bankruptcy Court lacked subject matter jurisdiction to enter the Order for Relief. The Former D&Os respectfully request this Court to decide on the basis of the undisputed facts in the record before this Court that the Three Creditors did not satisfy the requirements of Section 303(b).[48] Alternatively, this Court should remand to the Bankruptcy Court with instructions to dismiss if it determines that the Three Creditors do not meet the requirements of Section 303(b) to serve as petitioning creditors against N2N.

## B. The Bankruptcy Court Erred in Determining that the Former D&Os Lacked Standing to Seek Dismissal of the Involuntary Case

Even if the requirements of Section 303(b) were not jurisdictional—such that the Bankruptcy Court was required to determine compliance regardless of whether challenged by a party—the Former D&Os are parties who have standing to challenge the involuntary petition. The standing of the Former D&Os to seek dismissal of this case is established by collateral estoppel, because the issue of standing was litigated and determined favorably to the Former D&Os in the voluntary case. In any event, the Former D&Os have standing because they have pecuniary interests at stake in N2N's bankruptcy.

### 1. The Former D&Os have Standing Based on Collateral Estoppel.

In the voluntary case, the Bankruptcy Court ruled that:

---

[48] See In re Ben Franklin Hotel Assocs., 186 F.3d 301, 306 (3d Cir. 1999) ("Because the record has been sufficiently developed for us to resolve this legal issue, we need not remand to the District Court to consider it in the first instance."); see also Stetson v. Howard D. Wolf & Assocs., 955 F.2d 847, 850-51 (2d Cir. 1992) ("An appellate court has the power to decide cases on appeal if the facts in the record adequately support the proper result.").

> [The Former D&Os'] rights will be affected if the bankruptcy case remains in this Court and the Assignee proceeds with litigation against them. Accordingly, they have standing as persons aggrieved to seek dismissal.

In re N2N Commerce, Inc., 405 B.R. 34, 39 (Bankr. D. Mass. 2009).[49]  The very same issue was presented in this case:  Do the Former D&Os have standing to seek dismissal of an N2N bankruptcy?  Since the issue was litigated and determined favorably to the Former D&Os in the voluntary case, principles of issue preclusion required the Bankruptcy Court to make the same ruling in this case.

The prerequisites for issue preclusion are as follows:  (1) both proceedings must involve the same issue of law or fact; (2) the parties actually litigated the issue in the first proceeding; (3) the court hearing the first proceeding must have actually resolved the issue in a final and binding judgment; and (4) its resolution of that issue of law or fact was essential to its judgment.  Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994).  Along with the Assignee, NaviSite and Optaros actually litigated the issue of the Former D&Os' standing in the voluntary case.[50]  The Bankruptcy Court squarely decided the issue in the Former D&Os favor.  405 B.R. at 39.  The ruling was essential to the Bankruptcy Court's ruling to grant the Former D&Os' motion to dismiss and to dismiss the voluntary case.  Id. at 43.  Consequently, the doctrine of issue preclusion precludes a determination that the Former D&Os lack standing to seek dismissal of the involuntary case.  See Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 (1st Cir. 1995) (collateral estoppel precludes relitigation of issue actually litigated by parties in prior proceeding, actually decided by court, and necessary to court's ruling).

---

[49] Also at App. Rec. 22.
[50] App. Rec. 20, at pp. 6-8.

The Bankruptcy Court's decision addresses only one element of collateral estoppel as being in dispute: whether this case and the prior case involve the same issue.

The Bankruptcy Court stated:

> The issue of whether [the Former D&Os] have standing with respect to their Motion to Dismiss Involuntary Case is different than the issue presented in the voluntary Chapter 7 petition filed by the Assignee. *Because the [the Former D&Os] have not and may not be sued by a Chapter 7 trustee following the entry of an order for relief, the [Former D&Os] are not at this juncture "persons aggrieved."*

<u>In re N2N Commerce, Inc.</u>, 2009 WL 3317274 at *2 (Bankr. D. Mass. 2009)[51] (emphasis added). This determination of the Bankruptcy Court—that the issue of the Former D&Os' standing in the involuntary case is different than it was in the voluntary case—is clearly erroneous. The position of the Former D&Os in the involuntary case is exactly the same as it was in the voluntary case. In the voluntary case as in the present case, the Former D&Os had not been sued by the Chapter 7 trustee. In the voluntary case as in the present case, the Former D&Os were parties to the Superior Court Action and the Delaware Action with the Assignee. In the voluntary case as in the present case, the Chapter 7 trustee is deemed to step into the Assignee's shoes with respect to the estate's causes of action at issue in the Superior Court Action and the Delaware Action, and any other claims that N2N might have been able to bring against the Former D&Os. 11 U.S.C. §§ 541(a), 543(b) and 704(a)(1).[52] In sum, the position of the Former D&Os in relation to the Chapter 7 trustee is exactly the same in this case as it was in the voluntary case. Because of the identity of issues, the Bankruptcy Court's ruling in the voluntary case is binding in the present case. The Bankruptcy Court's determination that it was not bound by its prior ruling on standing,

---

[51] Also at App. Rec. 7.

[52] These sections provide that, upon the order for relief, N2N's claims and causes of action transferred to the Assignee under the Assignment Contract become property of the Chapter 7 estate and subject to the control of the Chapter 7 trustee. <u>See also</u> Fed. R. Bankr. P. 6009 ("With or without court approval, the trustee … may prosecute or … defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal."). Neither the statute nor the rule distinguishes between voluntary and involuntary Chapter 7 cases.

premised as it was on an incorrect inference from the record,[53] must be set aside.

### 2. Even if the issue of standing is viewed *de novo*, the Former D&Os have established their standing

Apart from collateral estoppel, the Former D&Os presented the Bankruptcy Court with ample grounds to establish their standing.[54]  It is well settled that:

> To have standing to appeal a final bankruptcy order, an appellant must be a "person aggrieved," which means that the bankruptcy order must "directly and adversely affect[ ] [the appellant's] pecuniary interests."  The order must "diminish the [appellant's] property, increase [the appellant's] burdens, or detrimentally affect [the appellant's] rights."

In re High Voltage Engineering Corp., 403 B.R. 163, 166-67 (D. Mass. 2009) (Tauro, J.) (citations omitted).  Under this standard it is clear that the Former D&Os have standing.

First, the pendency of N2N's bankruptcy case, with its announced focus on pursuing claims against the Former D&Os, would clearly place a pecuniary burden on the Former D&Os. The Bankruptcy Court was correct in so holding in the voluntary case.  This Court has recognized the standing of a litigation defendant in a bankruptcy case to appeal even from rulings not directly affecting the defendant.  Comjean v. Cruickshank, 191 B.R. 504, 506-07 (D. Mass. 1995) (Tauro, J.).

Second, Appellants Asbaty, Delcher, LaHaye and Pinchanski are creditors of N2N, and as such have a pecuniary interest in the bankruptcy case, by reason of their contingent claims against N2N under Section 502(h) of the Bankruptcy Code.  11 U.S.C. § 502(h).  The Assignee (for whom the bankruptcy trustee is now substituted) has sued Former D&Os in the Superior Court action, seeking to recover preferential transfers.  If judgment is entered against the Former

---

[53] Inferences from the record, which are reviewed without deference to the Bankruptcy Court, may be reversed for mere error.  Arcari v. Marder, 225 B.R. 253, 254-55 (D. Mass. 1998) (Tauro, J.).  Even if the Bankruptcy Court's statement were viewed as a finding of fact, it is clearly erroneous because it finds no support in the record.

[54] App. Rec. 5, at pp. 3-6.

D&Os, the Former D&Os will have claims back against the bankruptcy estate in the amount of the judgment.  Id.; see Adelphia Recovery Trust v. Bank of America, N.A., 390 B.R. 80, 98 (S.D.N.Y. 2008) (recognizing right of recipient of avoided transfer to file claim under Section 502(h)).  This is consistent with the purpose of the preference statute, which is redistribution rather than punishment; the transferee must pay the bankruptcy estate in 100-cent dollars, but the claim back against the estate will be paid *pro rata* with other general unsecured claims, typically at far less than 100-cents on the dollar.

Finally, the Former D&Os have demanded indemnification and advancement of legal fees and other expenses that they have incurred and will incur in defending against the allegations made by the Assignee that must now be pursued (if at all) by the Chapter 7 trustee.  Those demands were made in accordance with N2N's by-laws, certain director indemnification agreements, and Delaware law.  The Former D&Os' indemnification and advancement claims on the assets of N2N's estate give them a right to payment as well as an "interest in the outcome of the proceeding."  In re Hayes, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (standing conferred by having such an interest).

For all of the foregoing reasons, the Former D&Os have standing in the bankruptcy case because their pecuniary interests are at stake.  However, the Bankruptcy Court appears to have construed Section 303 to incorporate a more limited concept of standing whereby only the debtor has standing to challenge deficiencies in an involuntary petition.  In re N2N Commerce, Inc., 2009 WL 3317274 at *2, *3 (Bankr. D. Mass. 2009).  Even assuming that the Bankruptcy Court correctly construed Section 303(d) and (h) as denying standing to the Former D&Os, the Bankruptcy Court erred in failing to recognize that the Former D&Os had standing under Section

707(a) of the Bankruptcy Code to seek dismissal of the bankruptcy case by reason of the

petitioning creditors' failure to qualify as such under Section 303(b).

Section 707(a) of the Bankruptcy Code provides as follows:

The court may dismiss a case under [Chapter 7] only after notice and a hearing and only for cause, including—

(1)     unreasonable delay by the debtor that is prejudicial to creditors;
(2)     nonpayment of any fees and charges required under Chapter 123 of title 28; and
(3)     failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on motion by the United States Trustee.

11 U.S.C. § 707(a).  The examples do not limit the definition of "cause" but are merely

illustrative.  H.R.Rep. No. 595, 95th Cong. 1st Sess. 380 (1977), U.S.Code Cong. &

Admin.News 1978, p. 6336; S.Rep. No. 989, 95th Cong. 2d Sess. 84 (1978), U.S.Code Cong. &

Admin.News 1978, pp. 5787, 5870; Fisher v. Bank Leumi Trust Co. of New York (In re

MacFarlane Webster Assoc.), 121 B.R. 694, 696 (Bankr. S.D.N.Y. 1990).

Failure of a petitioning creditor to meet the requirements of Section 303(b) constitutes

cause for dismissal under Section 707(a).  In re Jr. Food Mart of Arkansas, Inc., 234 B.R. 420,

421-22 (Bankr. E.D. Ark. 1999).  Like the instant case, Jr. Food Mart involved a non-debtor's

motion to dismiss an involuntary petition under Sections 303 and 707(a) of the Bankruptcy

Code.  (In each instance dismissal was also sought under Section 305(a), but the Former D&Os

are not appealing based on Section 305(a).)  Although holding that only the debtor could move to

dismiss the case under Section 303, the court held that the movants' lack of standing under

Section 303 did not preclude standing to seek dismissal under Sections 305(a) and 707(a):

Unlike section 303 and Rule 1011 governing pleadings in response to the involuntary petition, sections 305(a) and 707(a) contain no language limiting who may file a motion to dismiss such that any party in interest may file and prosecute such motions. See Fisher

v. Bank Leumi Trust Co. of New York (In re MacFarlane Webster Assoc.), 121 B.R. 694, 696, 700-702 (Bankr. S.D.N.Y. 1990) ("The wording of the statute indicates that ... any party in interest can make such a [707(a)] motion...."); In re Westerleigh Development Corp., 141 B.R. 38 (Bankr. S.D.N.Y. 1992) (50% shareholder of debtor corporation had standing to obtain dismissal of bankruptcy under section 305). Prohibiting a creditor or other party in interest from seeking dismissal of an involuntary case would permit abusive filings without restraint.

Id. at  421-22.

To like effect is the case of Fisher v. Bank Leumi Trust Co. of New York (In re MacFarlane Webster Assoc.), 121 B.R. 694 (Bankr. S.D.N.Y. 1990).  In MacFarlane Webster, defendants in litigation brought by a Chapter 7 trustee sought to dismiss the Chapter 7 case based on misconduct by a petitioning creditor, who filed the involuntary petition to stay a foreclosure sale even though the creditor had previously consented to the sale.  Id. at 695.  The debtor did not contest the petition.  Id.  This raised the issue of the non-debtor movants' standing to seek dismissal of the petition.  Considering whether Section 303 provided the sole means to contest an improper involuntary petition, the court concluded that the movants' arguable lack of standing under Section 303 did not prevent the movants from seeking dismissal under Section 707(a):

> Indeed, without such construction of section 707(a), there would be considerable potential for abuse.  The Code provides only that an alleged debtor can file an answer to an involuntary petition.  *See* 11 U.S.C § 303(d).  When an alleged debtor defaults, as here, an order for relief is entered.  *See* 11 U.S.C § 303(h).  Section 303(d) precludes non-petitioning creditors from opposing the petition. …  Nowhere in the Code is it indicated that Congress contemplated, but rejected, a remedy for abuse by a petitioning creditor where the debtor had no interest in contesting the petition.  Thus, not to construe section 707(a) to vest the court with authority to find cause in the abuse of creditors through the continued maintenance of a bankruptcy case commenced by the filing of an involuntary petition would be to permit such abuse.  Congress could not have intended such a result.

Id. at 700-01 (citations omitted).

As a matter of statutory construction, it is hard to imagine a more obvious "cause" for dismissal of a Chapter 7 case than failure to comply with another applicable provision of the

Bankruptcy Code—in this case, Section 303(b).  Indeed, one example of "cause" supplied by

Section 707(a) itself is failure to comply with another provision of the Bankruptcy Code (Section

521).  To this must be added the insight of <u>Jr. Food Mart</u> and <u>MacFarlane Webster</u> concerning

the statutory scheme:  If an improper involuntary petition were not construed as "cause" for

dismissal under Section 707(a), bankruptcy courts would be left without a remedy for an abusive

involuntary petition which the debtor, for whatever reason, failed to oppose.  An improper

involuntary petition constitutes cause for dismissal under Section 707(a).

In sum, the Former D&Os had standing to seek dismissal of the involuntary petition

under Section 707(a).  Therefore, the Bankruptcy Court was required to address the merits of the

motion regardless of the Former D&Os' standing under Section 303 and regardless of whether

the requirements of Section 303(b) are subject-matter jurisdictional.  It was error for the

Bankruptcy Court not to determine whether the Three Creditors satisfied the requirements of

Section 303(b).  Given that the Three Creditors' lack of qualification under Section 303(b) is

clear on the face of the record, as demonstrated above,[55] this Court should remand with

instructions to the Bankruptcy Court to dismiss the case.  Alternatively, this Court should remand

to the Bankruptcy Court with instructions to dismiss if it determines that the Three Creditors do

not meet the requirements of Section 303(b) to serve as petitioning creditors against N2N.

C.  **The Bankruptcy Court Erred in Determining that the Three Creditors Were Not Estopped from Filing the Involuntary Petition**

As Assenting Creditors under the Assignment, the Three Creditors agreed that the

Assignment would be the procedure for liquidating N2N.  As will be demonstrated below, case

law is clear that creditors who assent to an assignment for benefit of creditors ordinarily are

estopped from joining in an involuntary bankruptcy petition.  To the extent that equitable factors

---

[55] <u>See</u> Section A.2 above (pp. 18-22).

come into play, the equities favor estoppel as will also be shown below.  Yet the Bankruptcy

Court addressed the estoppel argument in a single sentence from which it is possible to glean

little except that the court failed to apply the correct legal standard.

Section 5.4 of the Assignment Contract provides that:

> An Assenting Creditor hereby agrees that it will not institute a suit against [N2N]
> or any other proceeding at law or equity or otherwise on account of any debt due
> and owing to such Assenting Creditor from [N2N] … .  Each Assenting Creditor
> accepts in lieu of its claim the rights acquired hereunder and agrees that this
> A/F/B/C may be pleaded as a defense or bar to any such suit or proceeding.[56]

Thus, by assenting to the Assignment, each of the Three Creditors agreed (along with every other

Assenting Creditor) to accept distributions under the Assignment in full satisfaction of its claim

against N2N, agreed not to file any lawsuit *or other proceeding*—which would surely include an

involuntary bankruptcy—against N2N on account of the relinquished claim, and agreed that the

Assignment could be pleaded as a defense or bar to any such suit or other proceeding.  It is clear

from the terms of the Assignment that Assenting Creditors realized they were selecting the

Assignment as their exclusive remedy in relation to N2N.  This was N2N's understanding as

well; in the voluntary case, the Bankruptcy Court ruled that when N2N's board voted for the

Assignment, they intended it as an alternative to Chapter 7 and did not contemplate that N2N

could thereafter be placed in bankruptcy.  In re N2N Commerce, Inc., 405 B.R. at 43.

In their Motion to Dismiss Involuntary Case, the Former D&Os demonstrated to the

Bankruptcy Court that the Three Creditors were estopped from filing an involuntary petition.

The Former D&Os pointed out that not only did the Three Creditors assent to the Assignment,

but they participated in the administration of the Assignment for 18 months before filing the

involuntary petition, and they accepted their share of the $350,000 distribution made in August

---

[56] App. Rec. 3, at Exhibit B, § 5.4.

2008. Then the Three Creditors waited until after the distribution became non-voidable under the Bankruptcy Code's preference recovery provision,[57] and filed their involuntary petition. These facts were not disputed by the Three Creditors.

Generally, creditors who assent to an assignment for the benefit of creditors are estopped from later filing an involuntary bankruptcy petition against the assignor absent fraud or misrepresentation by the assignor-debtor or unless necessary to prevent injustice. See Moulton v. Coburn, 131 F. 201, 203 (1st Cir. 1904) ("a creditor who has assented in writing to the terms of a common law assignment for the benefit of creditors is not entitled ordinarily to join in an involuntary petition … ."); Queen City Shoe Mfg. Corp. v. Commonwealth Last Co., 134 F.2d 422, 423 (1st Cir. 1943) (creditor providing written assent to assignment generally not permitted to pursue involuntary petition absent need to prevent injustice resulting from bad faith of debtor, such as nondisclosure of circumstances sufficient to deny discharge under the Bankruptcy Act); accord, Fisher v. Bank Leumi Trust Co. of New York (In re MacFarlane Webster Assoc.), 121 B.R. 694, 698 (Bankr. S.D.N.Y. 1990) ("[C]reditors who voluntarily assent and participate in the general assignment for the benefit of creditors, in the absence of fraud and misrepresentations, are estopped from thereafter filing or becoming parties to a petition in bankruptcy.").  Apart from fraud in the inducement, creditors who assent to an assignment will not be estopped from filing an involuntary petition where a post-assignment event gives rise to the need for substantive relief available solely under the Bankruptcy Code.  See In re John Oliver Co., Inc., 24 B.R. 539, 541 (Bankr. D. Mass. 1982) (creditors that had assented to assignment for benefit of creditors were permitted to file involuntary petition to utilize Bankruptcy Code power to avoid preferential transfer that occurred after the assignment).  Yet even where relief from estoppel might be appropriate, assenting creditors must act promptly to avail themselves of the bankruptcy

---

[57] See 11 U.S.C. § 547(b)(4)(A) (providing a 90-day lookback period for non-insider preferences).

alternative.  See In re Goldman-Rosenzweig Co., Inc., 65 F.2d 390, 391 (2d Cir. 1933) (creditors

whose assent to assignment for benefit of creditors was obtained by fraud were estopped from

filing involuntary petition when they did not withdraw their assent promptly upon learning of the

fraud and continued to proceed under the assignment with full knowledge of the facts).

The Three Creditors have not even attempted to argue that this case entails the prejudice

to creditors outside bankruptcy that was present in Oliver.  And, indeed, the involuntary petition

is not the least bit necessary to preserve causes of action available only under the Bankruptcy

Code.  Instead the Three Creditors wish for a trustee to assert in bankruptcy court causes of

action that not only can be *but already have been* brought in state courts.  The Three Creditors

have offered no reason why the Delaware Chancery Court is not a fair and capable forum to

adjudicate claims under Delaware corporate law or the Massachusetts Superior Court is not a fair

and capable forum to adjudicate claims under the Massachusetts Uniform Fraudulent Transfer

Act.

As a reason for not being estopped from filing the involuntary petition, NaviSite and

Optaros contend that only after assenting to the Assignment did they become aware of certain

potential claims against the Former D&Os and other parties.  Yet the uncontradicted record

below shows that Optaros was aware of potential claims as early as January 2008, before Optaros

assented to the Assignment.[58]  The record shows that the other two petitioning creditors were

aware of potential claims by no later than October 2008 (the Former D&Os believe the

awareness came several months earlier, but that allegation is disputed and was not the subject of

a finding by the Bankruptcy Court).[59]  Despite such knowledge, the Three Creditors failed to

pursue any bankruptcy alternative.  Rather, they acquiesced in the Assignee's continued

---

[58] App. Rec. 6, at ¶ 4.
[59] App. Rec. 4, at ¶ 44.

administration of the Assignment, including the Assignee's commencement of the Superior Court Action. ***To this date, none of the Three Creditors has sought to rescind its assent to the Assignment.*** The creditors' delay is fatal to their argument that they are not estopped from filing the involuntary petition against N2N. See Goldman-Rosenzweig Co., Inc., supra, 65 F.2d at 391.

The Bankruptcy Court's decision ignores all of these factors compelling estoppel, and articulates no grounds why estoppel should not apply. The decision addresses the estoppel issue in a single sentence:

> While the [Former D&Os] argue that the petitioning creditors should be estopped because of their execution of their Assignment for the Benefit of Creditors, citing, *inter alia*, Moulton v. Coburn, 131 F.201 (1st Circuit 1904), cert. denied, 196 U.S. 640 (1905), the petitioning creditors are not parties to the litigation commenced by the Assignee in the Massachusetts Superior Court or the declaratory judgment action commenced by [the Former D&Os] in the Court of Chancery for the State of Delaware.

In re N2N Commerce, Inc., 2009 WL 3317274, *2 (Bankr. D. Mass. 2009). This is a non-sequitur.[60] It certainly does not reflect that the Bankruptcy Court considered the estoppel argument or applied the correct legal standard (indeed, any legal standard) to determine its merits. In the event this Court declines to dismiss the involuntary case for lack of jurisdiction, the Court should remand to the Bankruptcy Court with instructions to determine the estoppel issue in light of applicable case law, including the First Circuit decisions in Moulton v. Coburn and Queen City Shoe, supra, and the Second Circuit's decision in Goldman-Rosenzweig, supra.

## CONCLUSION

Based on the foregoing, the order of the Bankruptcy Court denying Appellants' Motion to Dismiss should be reversed, and remanded to the Bankruptcy Court with instructions to dismiss this case.

---

[60] The Former D&Os never alleged that the Three Creditors are parties to the litigation between the Former D&Os and the Assignee.

Dated: January 22, 2010

Respectfully submitted,

STEPHEN ASBATY, LAWRENCE BOHN,
JOEL CUTLER, MARK DELCHER,
WENDY LAHAYE, RUBEN PINCHANSKI,
MARTYN REDGRAVE & SHAREN
TURNEY,

By their attorneys,

*/s/ A. Davis Whitesell*
Daniel C. Cohn (No. 090780)
A. Davis Whitesell (No. 551462)
COHN WHITESELL & GOLDBERG LLP
101 Arch Street
Boston, Massachusetts  02110
Tel.:  617.951.2505
Fax:  617.951.0679
E-Mail:  whitesell@cwg11.com

*Counsel for Martyn Redgrave and Sharen Turney*

*/s/ Michael J. Pappone*
Michael J. Pappone (No. 388900)
Anthony S. Fiotto (No. 558089)
Jennifer W. Fischesser (No. 651480)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231
E-Mail:  mpappone@goodwinprocter.com
afiotto@goodwinprocter.com
jfischesser@goodwinprocter.com

*Counsel for Lawrence Bohn and Joel Cutler*

/s/ Scott Birnbaum
_____

Scott Birnbaum (No. 543834)
BIRNBAUM & GODKIN LLP
280 Summer Street
Boston, Massachusetts  02210
Tel.:  617.307.6100
Fax:  617.307.6101
E-Mail:  birnbaum@birnbaumgodkin.com

*Counsel for Stephen Asbaty, Mark Delcher,*
*Wendy Lahaye & Ruben Pinchanski*

G:\DATA\1287p\Appellants' Brief FINAL

### 303. Involuntary cases

(a) An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer, family farmer, or a corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced.

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title--

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $13,475 [FN1] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $13,475 [FN1] of such claims;

(3) if such person is a partnership--

(A) by fewer than all of the general partners in such partnership; or

(B) if relief has been ordered under this title with respect to all of the general partners in such partnership, by a general partner in such partnership, the trustee of such general partner, or a holder of a claim against such partnership; or

(4) by a foreign representative of the estate in a foreign proceeding concerning such person.

(c) After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

(d) The debtor, or a general partner in a partnership debtor that did not join in the petition, may file an answer to a petition under this section.

(e) After notice and a hearing, and for cause, the court may require the petitioners under this section to file a bond to indemnify the debtor for such amounts as the court may later allow under subsection (i) of this section.

(f) Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

(g) At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor. Before an order for relief, the debtor may regain possession of property in the possession of a trustee ordered appointed under this subsection if the debtor files such bond as the court requires, conditioned on the debtor's accounting for and delivering to the trustee, if there is an order for relief in the case, such property, or the value, as of the date the debtor regains possession, of such property.

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if--

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount; or

(2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment--

(1) against the petitioners and in favor of the debtor for--

(A) costs; or

(B) a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for--

(A) any damages proximately caused by such filing; or

(B) punitive damages.

(j) Only after notice to all creditors and a hearing may the court dismiss a petition filed under this section--

 (1) on the motion of a petitioner;

 (2) on consent of all petitioners and the debtor; or

 (3) for want of prosecution.

(k) [Repealed. Pub.L. 109-8, Title VIII, § 802(d)(2), Apr. 20, 2005, 119 Stat. 146]

(l)(1) If--

 (A) the petition under this section is false or contains any materially false, fictitious, or fraudulent statement;

 (B) the debtor is an individual; and

 (C) the court dismisses such petition,

the court, upon the motion of the debtor, shall seal all the records of the court relating to such petition, and all references to such petition.

(2) If the debtor is an individual and the court dismisses a petition under this section, the court may enter an order prohibiting all consumer reporting agencies (as defined in section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f))) from making any consumer report (as defined in section 603(d) of that Act) that contains any information relating to such petition or to the case commenced by the filing of such petition.

(3) Upon the expiration of the statute of limitations described in section 3282 of title 18, for a violation of section 152 or 157 of such title, the court, upon the motion of the debtor and for good cause, may expunge any records relating to a petition filed under this section.

## 1334. Bankruptcy cases and proceedings

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

(d) Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction--

(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

(2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

_____

I hereby certify that a true copy of the above document was served upon each party appearing pro se and the attorney of record for each other party by mail or by email through the Court's ECF system on January 22, 2010.  /s/ A. Davis Whitesell (No. 551462)